### CROKER v. SHURLEY et al.

No. 10658—Opinion Filed May 16, 1922.

(Syllabus.)

1. **Appeal and Error — Review of Equity Case—Sufficiency of Evidence.**

In an equitable proceeding the judgment of the trial court will not be set aside unless it is against the clear weight of the evidence.

## 2. Same—Action for Specific Performance of Contract to Convey Land.

Record examined, and held, that the judgment of the trial court is not clearly against the weight of the evidence.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by J. L. Croker against N. A. Shurley and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Alexander Gullett, W. D. French, and Sigler & Jackson, for plaintiff in error.

Champion & George, for defendants in error.

NICHOLSON, J. The plaintiff in error brought this action against the defendants in error, seeking the specific performance of a verbal contract for the sale of land alleged to have been entered into between the plaintiff and A. F. Shurley.

It is alleged in the petition, in substance, that on or about the 1st day of November, 1911, the plaintiff and A. F. Shurley entered into an agreement to purchase 140 acres of land situated in Carter county, then being advertised for sale at a guardian's sale; that on November 24, 1911, said A. F. Shurley purchased said land for the sum of $700 and that said land was conveyed to him; that thereafter the plaintiff and A. F. Shurley took possession of said land, and on or about the 15th day of December, 1911, they made an agreement partitioning said land; that by the terms of said agreement said A. F. Shurley was to retain and hold the north 80 acres of said land at the agreed price of $400, and was to convey to the plaintiff the south 60 acres (being the land in controversy) for a consideration of the sum of $300, and that plaintiff paid said Shurley said sum; that after said agreed partition of said land each party took possession of his portion thereof, and Shurley and his wife executed a mortgage to one G. M. Dodge on the 80 acres so set aside to him, and that said plaintiff took possession and exercised ownership over the 60 acres set apart to him, and paid the taxes thereon; that said A. F. Shurley departed this life on the 6th day of February, 1916, leaving surviving him the defendant N. A. Shurley, his widow, and the other defendants, his children; that the defendant N. A. Shurley is the daughter of the plaintiff. The prayer of the petition is that the court decree the plaintiff to be the sole owner of the 60 acres of land involved and entitled to a conveyance thereof, and requiring the defendant N. A. Shurley to convey said land to him by warranty deed, and to execute a proper guardian's

deed as guardian for the minor defendants, and that if said conveyance be not made, that the court order the sheriff of Carter county to execute to plaintiff a proper deed conveying said land to him.

To this petition an answer consisting of a general denial was filed. The case was tried to the court without the intervention of a jury, and the court found generally for the defendants, and rendered judgment in their favor, to review which this proceeding in error was brought.

The plaintiff in error relies upon but one assignment of error, viz., that the court erred in rendering a judgment for the defendants and in refusing to render a judgment for the plaintiff. This assignment necessarily involves the question of whether or not the judgment of the trial court is against the clear weight of the evidence.

To sustain the allegations of his petition, the plaintiff used as a witness one J. M. Dawson, his son-in-law, who testified that in the fall of 1911, the plaintiff and A. F. Shurley had a conversation in the presence of the witness wherein it was understood that the plaintiff and Shurley were to bid $5 per acre for the 140 acres of land then being advertised for sale at a guardian's sale, and if they bought the land Shurley was to pay for it and let the plaintiff have a portion of it at the same price paid by Shurley, and that Croker was to let Shurley have some cattle in payment for his share of the land; that in the following spring Shurley obtained from Croker three cows and calves at the agreed prices of $35 each, one cow at the agreed price of $25, and one heifer at the agreed price of $12.50; that after Shurley had removed the cattle, one of the cows returned to the home of the witness, and the plaintiff afterwards sold her. The witness further testified that the plaintiff purchased 24 spools of wire with which to fence the land, and that Shurley afterwards told him that he bought the wire at Coleman because he could get it cheaper; that both Croker and Shurley told him that each was to have half the wire to fence the place; that he thought the wire cost $2 per spool; that the plaintiff paid $5 for repairing Shurley's wagon. He also identified as Shurley's, the signature to the indorsement on two checks drawn by the plaintiff and payable to the order of A. F. Shurley, one of the checks being for the sum of $50, and the other for the sum of $25. He further stated that both Croker and Shurley told him that Shurley obtained 26 bushels of cotton seed from Croker, and that Croker let Shurley have 125 bushels of corn of the

value of 50 cents per bushel. On cross-examination he stated that he did not know whether Shurley paid Croker for the cotton seed, corn, wire, etc., or not.

Robert Hardy Wood, a witness for the plaintiff, testified that he was a son-in-law of the plaintiff; that he was acquainted with the land in controversy; that A. F. Shurley built a house and resided upon the north 80 acres of said land; that Shurley indicated to him the location of the line between the north 80 acres and the south 60 acres of said land; that the land was all inclosed in one inclosure. He also testified that Shurley obtained the cattle, cotton seed, wire, and corn mentioned by Dawson in his testimony, but, like Dawson, did not know whether or not Shurley paid the plaintiff therefor.

The plaintiff introduced evidence showing that A. F. Shurley and wife had executed a mortgage upon the north 80 acres of said land, and that plaintiff paid the taxes upon the south 60 acres of said land for several years, but he had not paid any taxes for two years prior to the institution of this action. He also introduced in evidence the petition of N. A. Shurley for the appointment of herself as guardian for the minor defendants filed in the county court of Johnston county, wherein it was recited that J. L. Croker was the owner of 6/14ths of 140 acres of land in section 15, township 5 south, range 3 east.

The plaintiff was permitted to testify as to certain facts pertaining to transactions with A. F. Shurley regarding the land in controversy. Much of his testimony was inadmissible, was admitted over the objection of the defendants, and, no doubt, his testimony was disregarded by the court.

To refute the evidence introduced by the plaintiff, the defendant Mrs. N. A. Shurley testified that she was the widow of A. F. Shurley, deceased, the mother of the other defendants and the daughter of the plaintiff; that A. F. Shurley purchased the land in controversy in the year 1911, and paid therefor the sum of $700; that her husband and his family took possession of said land shortly after said purchase and have remained in possession thereof at all times since; that the plaintiff had never at any time been in possession of said land; that the land was inclosed with a wire fence and that her husband purchased the wire and posts and erected the fence. She further testified that her father, the plaintiff, insisted upon her being appointed guardian of her children and that he accompanied her to the office of I. R. Mason, an attorney, and did all the talking with Mr. Mason; that she did not instruct Mr. Mason to recite in the petition for the appointment of herself as guardian the statement that the plaintiff owned an undivided 6/14ths interest in the 140 acres of land; that she signed the petition without reading it, and did not know that it contained such statement. She further testified that her husband paid the plaintiff $140 in money for the cattle purchased; that the corn purchased by her husband was paid for in work by her husband and his family; that she gave her husband the money with which to pay for the cattle and that he paid for them when he and their son obtained them. She testified that there was an agreement between her husband and her father whereby her father was to pay $300 for the south 60 acres of said land; that the consideration was to be paid in cash, and the reason this consideration was to be paid in cash was that her husband wanted to use the money to improve the other 80 acres. She further testified that the plaintiff did not pay any amount of the purchase price of the land. She further testified that she was present and saw her husband pay her father for the wire used in fencing the land, and that her husband also paid for the posts used.

Other witnesses testified on behalf of each of the parties to the action, but it is unnecessary to comment upon their testimony. After a thorough examination of the record, we are unable to say that the judgment is against the clear weight of the evidence. In an equitable proceeding, the judgment of the trial court will not be set aside unless it is clearly against the weight of the evidence. Robinson et al. v. Potterff, 78 Okla. 202, 189 Pac. 744; Lamb v. Alexander, 83 Okla. 292, 201 Pac. 519.

While it conclusively appears that there was an oral contract between A. F. Shurley and the plaintiff whereby Shurley agreed to sell and convey the land in controversy to the plaintiff, there is a sharp conflict in the evidence as to the payment of the purchase price, and the plaintiff has not sustained the burden cast upon him of clearly establishing such payment.

The judgment of the trial court, not being clearly against the weight of the evidence, is affirmed.

PITCHFORD, V. C. J., and JOHNSON, McNEILL, MILLER, and KENNAMER, JJ., concur.