## OKLAHOMA CITY v. DOBBINS et al.

No. 24343.   Feb. 19, 1935.

Rehearing Denied May 7, 1935.

Harlan T. Deupree, Municipal Counselor, Stokes, Jarman & Brown, and Cruce & Franklin, for plaintiff in error.

Joe T. Rogers, A. H. Dolman, Chas. H. Garnett, L. G. Hyden, and D. W. Eaton, for defendants in error.

E. E. Blake, amicus curiae.

OSBORN, V. C. J. This action was filed in the district court of Oklahoma county by C. E. Dobbins et al., as the heirs of Almira Wilkinson, deceased, against the city of Oklahoma City to quiet title and for possession of lot 5 in block 64 in the original townsite of Oklahoma City. The trial court rendered judgment in favor of plaintiffs with regard to the south 100 feet of said lot and in favor of defendant in regard to the north 40 feet of said lot, and both parties have appealed.

As to the north 40 feet of said lot, being a portion of the right of way of the Chicago, Rock Island & Pacific Railway Company, the case at bar is a companion case to the consolidated cases of Noble v. Oklahoma City and Higgins v. Oklahoma City, 172 Okla. 182, 44 P. (2d) 135, this day decided. With all of the preliminary background, such as the Indian title, and the extinguishment thereof, the grant of the right of way to the Choctaw Coal & Railway Company by act of Congress, the preliminary survey of the right of way, the settlement of the lands on April 22, 1889, the change of said location of said right of way, the abandonment thereof on December 4, 1930, the issuance of patent by the trustees of the townsite, the facts are identical with the above consolidated causes, except that in this case Joseph C. Chrisney was issued a deed for said lands, thereafter conveying the same to the railway company, with the following

clause: "Being intended for the use and occupation of said second party * * * as and for its right of way for the construction, operation, and maintenance of its railroad. * * * In case of abandonment of said premises by said second party * * * for the purpose above mentioned, the same shall revert to the grantors. * * *" Thereafter, Chrisney conveyed all of his interest in the whole of said lot to L. F. Cramer and Whit M. Grant, who conveyed all of their interest to Almira C. Wilkinson, now deceased, the plaintiffs being her heirs. The same legal questions are presented herein as to said 40 feet as were presented in the above consolidated cases. The trial court rendered judgment in favor of defendant as to said land, and on the authority of the above consolidated cases, we must affirm the judgment of the trial court as to said parcel of land.

In regard to the south 100 feet of the lot there is no dispute in regard to the facts. It is agreed that on July 7, 1900, Almira Wilkinson was the owner in fee simple of the lot in question. On that date she executed a warranty deed to the Oklahoma City Terminal Railroad Company, which is as follows:

"This indenture, made this 7th day of July, A. D. 1900, between Almira C. Wilkinson, a single woman of Oklahoma county in territory Oklahoma of the first part and the Oklahoma City Terminal Railroad Company of Oklahoma county in the territory of Oklahoma of the second part:

"Witnesseth, That the said party of the first part in consideration of the sum of three hundred seventy-five and no/100 dollars, the receipt of which is hereby acknowledged, does by these presents, grant, bargain, sell and convey unto said party of the second part, its successors or assigns, all of the following described real property and premises, situated in the county of Oklahoma and the territory of Oklahoma, to wit:

"The south one hundred feet off of lot five (5) in block sixty-four (64) in Oklahoma City as the same appears from the recorded plat thereof.

"To have and to hold the same, together with all and singular the improvements, tenements, hereditaments and appurtenances thereto belonging or in any wise appertaining forever.

"And the said Almira C. Wilkinson herself and her heirs, executors, or administrators, does hereby covenant, promise and agree to and with said party of the second part, that at the delivery of these presents she is lawfully seized in her own right of an absolute and indefeasible estate of inheritance, in fee simple of and in all and singular the above granted and described premises, with the appurtenances, that the same are free, clear and discharged and unincumbered of and from all former grants, titles, charges, estates, judgments, taxes, assessments and incumbrances of what nature or kind whatsoever, and that she will warrant and forever defend the same unto said party of the second part its heirs and assigns, against said party of the first part, her heirs and all and every person or persons whomsoever, lawfully claiming or to claim the same.

"In witness whereof, the said party of the first part has hereunto set her hand the day and year first above written.

"Almira C. Wilkinson."

On June 21, 1901, the Oklahoma City Terminal Railroad Company conveyed by absolute deed to the St. Louis & S. F. Railway Company; said company, by special master's deed dated September 16, 1916, approved by the federal court in foreclosure proceedings, conveyed the property to the St. Louis & S. F. Railroad Company, which company conveyed said property to the city of Oklahoma City on December 19, 1928.

In order to sustain that portion of the judgment of the trial court in favor of plaintiffs, they rely on the provisions of section 2, article 22, of the Constitution, relating to the rights of corporations to acquire and hold real estate, and more particularly the latter portion of section 2, relating to public service corporations. Plaintiffs contend that said section not only limits the quantity of real estate that can be held by a corporation, but also limits the quality of the title; that by the terms of said constitutional provision a railroad corporation cannot acquire a greater title than a railroad easement, and since it cannot acquire a fee-simple title, it is powerless to convey such title to any other person.

It is only necessary in this connection to call attention to the fact that the property herein was conveyed by plaintiffs' ancestor several years prior to the adoption of the Constitution; that the conveyance was not limited to use for a railroad right of way, but was a conveyance of fee-simple title. It is agreed that the Territorial Statutes of 1890 were in effect at the time the original conveyance was made. Section 11913, O. S. 1931, was section 1035, Oklahoma Territorial Statutes 1890, and in part provides:

"Every corporation formed under this article and every railroad corporation authorized to construct, operate or maintain a railroad within this state, shall be a body corporate by the name designated in its articles; shall have perpetual succession, shall

have the right to sue and be sued, may have a common seal and alter same at pleasure and shall also have power. * * *

"Second: To take and hold such voluntary grants of real estate and other property, either within or without this state, as may be made to it; to aid in the construction, maintenance and accommodation of its railroad; but the real estate received by voluntary grant shall be held and used for the purposes of such grant only.

"Third: To acquire under the provisions of this article, or by purchase, all such real estate and other property, either within or without this state as may be necessary for the construction, maintenance, and operation of the railroad, and the station, depot grounds, and other accommodations reasonably necessary to accomplish the objects of its incorporation, to hold and use the same to lease or otherwise dispose of any part or parcel thereto, or sell the same when not required for railroad uses, and no longer necessary for its use."

It is thus noted that when the conveyance was executed there was positive statutory authority granting to the railway company the right to acquire and sell real estate.

Plaintiffs rely upon the following cases: Canadian River R. Co. v. Wichita Falls & N. W. R. Co., 64 Okla. 63, 166 P. 163; Santa Fe, L. & E. R. Co. v. Laune, 67 Okla. 75, 168 P. 1002; Orth v. Gregory, 98 Okla. 229, 223 P. 385; Abercrombie v. Simmons, 71 Kan. 538, 81 P. 208. In each of the above cases it was held that the conveyance in question was a right of way only and upon abandonment by the railroad company the fee-simple title to the property reverted to the grantor. These cases are not controlling herein, for the reason that in each case the particular grant was for a right of way, while in the instant case the grant was in fee simple.

In the majority opinion by Mr. Justice Bayless in the case of Marland v. Gillespie, 168 Okla. 376, 33 P. (2d) 207, which case has had most careful consideration by this court, it was held that a warranty deed executed March 24, 1898, to the Southern Kansas Railway Company, conveying a strip of land for right of way, conveyed a fee-simple title and the grantee therein was invested with such title. In a lengthly dissenting opinion by Mr. Justice McNeill (168 Okla. 381, 33 P. [2d] 212), the distinction is pointed out between the granting of a fee simple and a right of way. The controversial issue as to the rules of law relating to a fee simple and a right of way are not presented by the record in this case, for the deed on its face purports to grant a fee-simple title, with no words of limitation. The conveyance was voluntary. The only question involved herein is whether or not there was authority in the company to acquire such title. The case of Marland v. Gillespie, supra, definitely settles said question in favor of defendant. The trial court erred, therefore, in its determination in regard to the south 100 feet of the lot in question. Although condemnation proceedings were instituted and carried forward to the point of the report of the appraisers and the payment of the money to the clerk of the court, the conveyance was voluntary, and we cannot assent that they can be used, within themselves, to limit the title conveyed by the execution of the deed above set forth.

The portion of the judgment of the trial court in favor of defendant is affirmed, and that portion of the judgment of the trial court in favor of plaintiffs is reversed, and the cause remanded, with directions to enter judgment in favor of defendant.

McNEILL, C. J., and RILEY, BAYLESS, BUSBY, WELCH, CORN, and GIBSON, JJ., concur. PHELPS, J., not participating.